UNITED STATES DISTRICT COURT
DISTRICT OF SOUTH DAKOTA
SOUTHERN DIVISION

| | |
|---|---|
| JEAN CLAUDE ROZAGIRIZA,<br><br>　　　　　　Plaintiff,<br><br>　vs.<br><br>PEPSI CO. BEVERAGE,<br><br>　　　　　　Defendant. | 4:25-CV-04030-CCT<br><br>**ORDER GRANTING PLAINTIFF'S MOTION FOR LEAVE TO PROCEED IN FORM PAUPERIS, DENYING PLAINTIFF'S MOTION FOR APPOINTMENT OF COUNSEL, AND 1915 SCREENING TO ALLOW PLAINTIFF TO FILE AMENDED COMPLAINT WITH EEOC MATERIALS ATTACHED** |

Plaintiff Jean Claude Rozagiriza filed a pro se lawsuit, alleging employment discrimination under Title VII of the Civil Rights Act of 1964, the Americans with Disabilities Act of 1964, and applicable state law. Docket 1. Rozagiriza moves for leave to proceed in forma pauperis. Docket 2. He also moves for appointment of counsel.[1] *Id.*

**I.　Motion for Leave to Proceed In Forma Pauperis**

A federal court may authorize the commencement of any lawsuit without prepayment of fees when an applicant submits an affidavit stating he or she is unable to pay the costs of the lawsuit. 28 U.S.C. § 1915(a)(1). "[I]n forma pauperis status does not require a litigant to demonstrate absolute destitution." *Lee v. McDonald's Corp.*, 231 F.3d 456, 459 (8th Cir. 2000). But in

---

[1] Although the docket reflects that Docket 2 is a motion for leave to proceed in forma pauperis, the substance of the filing also includes a request for the appointment of counsel. *See* Docket 2 at 6. Accordingly, the Court construes the filing as encompassing two distinct motions: (1) a motion for leave to proceed in forma pauperis, and (2) a motion for appointment of counsel.

1

forma pauperis status is a privilege, not a right. *Williams v. McKenzie*, 834 F.2d 152, 154 (8th Cir. 1987). Determining whether an applicant is sufficiently impoverished to qualify to proceed in forma pauperis under § 1915 is committed to the sound discretion of the district court. *Cross v. Gen. Motors Corp.*, 721 F.2d 1152, 1157 (8th Cir. 1983). After review of Rozagiriza's financial affidavit, this Court finds that he has insufficient funds to pay the filing fee. Thus, Rozagiriza's motion for leave to proceed in forma pauperis, Docket 2, is granted.

## II. 1915 Screening

### A. Factual Allegations in Rozagiriza's Complaint

On or about May 26, 2022, Defendant PepsiCo Beverage Sales, LLC (Pepsi), hired Rozagiriza, a black male from Rwanda, as a warehouse worker. Docket 1-1 at 1. Rozagiriza alleges that he "worked in this capacity until September 7, 2023." *Id.* According to Rozagiriza, he began experiencing "harassment and discrimination" in early 2023 based on "his race, color, national origin, and disability." *Id.*

Rozagiriza claims that the discriminatory treatment began following the transfer of "Supervisor Jonathan"[2] from Minnesota to the Sioux Falls plant. *Id.* Rozagiriza alleges that in May 2023, Supervisor Jonathan "blatantly told

---

[2] Rozagiriza does not provide the last names of individuals referenced in his complaint. For example, he identifies this individual as "Respondent Supervisor Jonathan," and refers to other individuals by their job title followed by what appears to be a first name. *Id.* For consistency and clarity, the Court will adopt Rozagiriza's naming conventions—omitting the term "Respondent"—when referring to these individuals throughout this Order.

[Rozagiriza] that he was racist." *Id.* Team Lead Ryan overheard Supervisor Jonathan's comment. *Id.* Rozagiriza asserts that he reported the incident to Supervisor Alex and Human Resources (HR), and HR advised that they would investigate the matter and follow up. *Id.* Rozagiriza alleges, however, that HR never contacted him. *Id.* Rather, approximately two weeks later, Supervisor Jonathan apologized, claiming the incident was a miscommunication. *Id.* When Rozagiriza questioned the need for an apology if it had indeed been a miscommunication, Supervisor Jonathan allegedly dismissed the matter and refused to discuss it further. *Id.* Rozagiriza claims that he thereafter raised his concerns with Manager Jason, who informed him that HR was handling the matter and that it was outside of his control. *Id.* Despite numerous calls and messages to HR, Rozagiriza asserts he never received a response. *Id.*

Rozagiriza describes another incident that occurred with Supervisor Jonathan in August 2023, when Rozagiriza was experiencing issues with the company's computer system. *Id.* He alleges that Supervisor Jonathan stated, "[I]f the system isn't working for you, maybe you should go back to your country and work." *Id.* Team Lead Ryan witnessed the remark and told Supervisor Jonathan that the comment was unnecessary. *Id.* Rozagiriza claims that he "did not feel comfortable continuing to work for [Supervisor] Jonathan" due to his "racial animosity[,]" which "was well known by all employees regardless of their race." *Id.* Rozagiriza asserts that he continued to report these incidents to management and HR, but no remedial action was taken. *Id.*

3

Rozagiriza also claims he was denied a promotional opportunity for a "floater" position in August 2023, which he contends have traditionally been awarded based on seniority. *Id.* According to Rozagiriza, Pepsi "deviated from protocol when they denied [him] the promotional opportunity and instead gave it to someone who had only been with the company approximately 90 days." *Id.* He believes that this decision was based on the color of his skin and in retaliation to his reporting of the alleged discrimination. *Id.* Rozagiriza claims he "had higher seniority and was qualified for the position, yet they gave it someone less qualified with less experience who was outside of [his] protected class." *Id.* He further alleges that, following his complaint, the terms and conditions of his employment changed, including being assigned more difficult tasks and reassigned to duties typically reserved for less senior employees, despite such assignments historically being based on seniority. *Id.* at 1-2.

Additionally, Rozagiriza claims that he was "paid differently than [his] coworkers of a different race, color, and national origin." *Id.* at 2. He asserts that his paychecks were routinely short and that these issues went unaddressed despite multiple reports to management and HR. *Id.* In June 2023, Rozagiriza alleges his paycheck did not include compensation for routine medical treatment following a workplace injury. *Id.* Rozagiriza further claims he consistently ranked among the company's top four performers but was denied bonuses and incentive pay provided to three white male employees. *Id.* Manager Jason allegedly acknowledged Rozagiriza's efficiency but dismissed

his pay-related concerns at a staff meeting with a joking remark: "[C]ome on use your muscles." *Id.*

Following a work-related injury in June 2023, Rozagiriza claims that Pepsi failed to honor the work restrictions imposed, including a restriction to 8-hour shifts. *Id.* He claims that he was treated less favorably than similarly situated employees outside his protected class. *Id.* For example, a non-black employee with a non-work-related injury was allegedly paid for full shifts despite spending the day in the break room, whereas Rozagiriza was required to clock out during breaks and coerced into signing a disciplinary write-up. *Id.* Rozagiriza also contends that, unlike his white coworkers, he was required to seek permission before leaving at the end of his 8-hour shift. *Id.*

Rozagiriza alleges that workplace tensions escalated, culminating in a physical altercation on or about August 24, 2023, when a member of Pepsi's management team, identified as Maintenance Supervisor John, allegedly grabbed Rozagiriza by his safety vest and told him to move. *Id.* Rozagiriza asserts that this incident prompted him to submit his resignation, as he felt physically threatened and could no longer tolerate the discriminatory environment. *Id.*

Rozagiriza brings claims under Title VII of the Civil Rights Act of 1964, the Americans with Disabilities Act of 1990 (ADA), and the Code of Ordinances of Sioux Falls, South Dakota. *Id.* He seeks "justice" and to prevent another individual from "going t[h]rough what" he went through. Docket 1 at 3. He further asserts that Pepsi offered him a settlement through mediation, which

5

he declined. *Id.* A second mediation was scheduled, but Pepsi allegedly withdrew its offer without explanation.³ *Id.*

### B. Legal Standard

When a district court determines a plaintiff is financially eligible to proceed in forma pauperis under § 1915(a), the court must then determine whether the complaint should be dismissed under § 1915(e)(2)(B). *Martin-Trigona v. Stewart*, 691 F.2d 856, 857 (8th Cir. 1982) (per curiam); *see also Key v. Does*, 217 F. Supp. 3d 1006, 1007 (E.D. Ark. 2016). The court must dismiss claims if they "(i) [are] frivolous or malicious; (ii) fail[ ] to state a claim on which relief may be granted; or (iii) seek[ ] monetary relief against a defendant who is immune from such relief." 28 U.S.C. § 1915(e)(2)(B).

A court when screening under § 1915 must assume as true all facts well pleaded in the complaint. *Est. of Rosenberg v. Crandell*, 56 F.3d 35, 36 (8th Cir. 1995). Pro se and civil rights complaints must be liberally construed. *Erickson v. Pardus*, 551 U.S. 89, 94 (2007) (per curiam) (citation omitted); *Bediako v. Stein Mart, Inc.*, 354 F.3d 835, 839 (8th Cir. 2004) (citation omitted). Even with this construction, "a *pro se* complaint must contain specific facts supporting its

---

³ Rozagiriza's request for relief is vague and lacks sufficient specificity to clearly identify the remedies sought. While he references a desire for "justice" and to prevent others from experiencing similar treatment, it is unclear whether he seeks injunctive relief, monetary damages (notwithstanding that he checked "no" for monetary damages on his complaint), or both. If Rozagiriza elects to amend his complaint to clearly articulate the specific forms of relief he is seeking, the Court reminds him that under Local Rule 15.1, any amended complaint must reproduce the entire pleading as amended, and the "proposed changes must be highlighted or underlined so that they may be easily identified." D.S.D. Civ. LR 15.1. Rozagiriza is further advised that an amended complaint supersedes and renders the original complaint of no legal effect.

conclusions." *Martin v. Sargent*, 780 F.2d 1334, 1337 (8th Cir. 1985) (citation omitted); *see also Ellis v. City of Minneapolis*, 518 F. App'x 502, 504 (8th Cir. 2013) (per curiam) (citation omitted). Similarly, civil rights complaints cannot be merely conclusory. *Davis v. Hall*, 992 F.2d 151, 152 (8th Cir. 1993) (per curiam) (citation omitted); *Parker v. Porter*, 221 F. App'x 481, 482 (8th Cir. 2007) (per curiam) (citations omitted).

A complaint "does not need detailed factual allegations . . . [but] requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do[.]" *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (internal and additional citation omitted). If a complaint does not contain these bare essentials, dismissal is appropriate. *See Beavers v. Lockhart*, 755 F.2d 657, 663–64 (8th Cir. 1985) (explaining that a district court does not err when it dismisses a claim based on vague allegations or unsupported generalizations). *Twombly* requires that a complaint's "[f]actual allegations must be enough to raise a right to relief above the speculative level on the assumption that all the allegations in the complaint are true[.]" 550 U.S. at 555 (cleaned up); *see also Abdullah v. Minnesota*, 261 F. App'x 926, 927 (8th Cir. 2008) (per curiam) (noting that a complaint "must contain either direct or inferential allegations respecting all material elements necessary to sustain recovery under some viable legal theory" (citing *Twombly*, 550 U.S. at 553–63)). Further, "a well-pleaded complaint may proceed even if it strikes a savvy judge that actual proof of the facts alleged is improbable, and that a recovery is very remote and unlikely." *Braden v. Wal-Mart Stores, Inc.*, 588 F.3d 585, 594 (8th

7

Cir. 2009) (internal quotation marks omitted) (quoting *Twombly*, 550 U.S. at 556).

### C. Legal Analysis

#### 1. Exhaustion of Administrative Remedies

Rozagiriza alleges violations of his rights under Title VII and the ADA. This Court can only consider employment discrimination claims once they have been exhausted through the Equal Employment Opportunity Commission (EEOC). *Weatherly v. Ford Motor Co.*, 994 F.3d 940, 944 (8th Cir. 2021). The EEOC must be offered the "initial opportunity to investigate allegations of employment discrimination and to work with the parties toward voluntary compliance and conciliation." *Parisi v. Boeing Co.*, 400 F.3d 583, 585 (8th Cir. 2005).

"[T]he Eighth Circuit has held that a party must file a charge of discrimination with the [EEOC] and receive a right-to-sue letter before initiating Title VII and ADA claims in federal court." *Jima v. Smithfield Package Meat Corp.*, 4:23-CV-04145-RAL, 2024 WL 1435492, at *5 (D.S.D. Apr. 3, 2024) (citing *Stuart v. Gen. Motors Corp.*, 217 F.3d 621, 630 (8th Cir. 2000); *Moses v. Dassault Falcon Jet-Wilmington Corp.*, 894 F.3d 911, 919 (8th Cir. 2018)); *see also Shannon v. Ford Motor Co.*, 72 F.3d 678, 684 (8th Cir. 1996) ("The proper exhaustion of administrative remedies gives the plaintiff a green light to bring [his] employment-discrimination claim[.]"). "To exhaust administrative remedies an individual must: (1) timely file a charge of discrimination with the EEOC setting forth the facts and nature of the charge

and (2) receive notice of the right to sue." *Rush v. Ark. DWS*, 876 F.3d 1123, 1125 (8th Cir. 2017) (per curiam) (citation omitted). "Once an individual receives notice of the right to sue, [he] has 90 days in which to file suit. *Williams v. Little Rock Mun. Water Works*, 21 F.3d 218, 222 (8th Cir. 1994) (citation omitted).

Here, Rozagiriza has attached a copy of his charge of discrimination. Docket 1-1. In that charge, he indicates discrimination based on race, color, national origin, retaliation, and disability. *Id.* at 1. However, he has not provided a copy of a right-to-sue letter, nor has he alleged that he has received one. Absent such letter or assertion thereof, the Court cannot determine whether Rozagiriza's claims are timely or whether he has fully exhausted his administrative remedies. *See Braxton v. Bi-State Dev. Agency*, 728 F.2d 1105, 1108 (8th Cir. 1984) (affirming trial court's conclusion that plaintiff's "claim was time-barred by failure to bring the cause of action within ninety days of receipt of the right-to-sue letter" (citations omitted)); *Allen v. Shaffer*, Case No. 4:20-CV-00150-BCW, 2020 WL 12675252, at *2 (W.D. Mo. Sept. 18, 2020) (dismissing, without prejudice, plaintiff's complaint for lack of evidence indicating issuance of a right-to-sue letter by EEOC).

At this time, the Court defers ruling on whether Rozagiriza has failed to exhaust his administrative remedies to allow Rozagiriza thirty days from the date of this Order to amend his complaint and attach the EEOC materials, which include the EEOC charge of discrimination and the right-to-sue letter. *See Cone v. Orrock*, 5:22-CV-05087-RAL, 2023 WL 2770567, at *3, 5 (D.S.D.

Apr. 4, 2023) (deferring ruling on whether plaintiff exhausted administrative remedies, and ordering him to amend to include EEOC materials and replead facts supporting the elements of his claim); *Jones v. Am. State Bank*, 857 F.2d 494, 499-500 (8th Cir. 1988) (recognizing that while "a right-to-sue notice is a condition precedent to filing of a Title VII claim," the defect is "curable after the action has commenced"); *Jefferson v. Mercy Hosp.*, No. 4:24-CV-1308 CDP, 2024 WL 4679069, at *2 (E.D. Mo. Nov. 5, 2024), *reconsideration of assignment of counsel and financial assistance denied*, No. 4:24-CV-1308 CDP, 2024 WL 4764808 (E.D. Mo. Nov. 13, 2024) (allowing plaintiff to supplement her complaint by submitting a copy of her charge of discrimination within thirty days of the order). If Rozagiriza fails to submit his right-to-sue letter, his complaint will be dismissed without prejudice under 28 U.S.C. § 1915(e)(2)(B)(2).

### 2. State-Law Claims

Rozagiriza also alleges that Pepsi discriminated and retaliated against him, failed to pay workers' compensation resulting in unpaid medical bills, failed to pay him fairly, and withheld bonuses and incentive pay. Docket 1-1 at 2. Construing his complaint liberally, the Court understands Rozagiriza to be asserting various state-law claims. *See id.* (stating that Pepsi violated his "rights protected by the Code of Ordinances of Sioux Falls, South Dakota"). Under 28 U.S.C. § 1367(a), this Court "shall have supplemental jurisdiction over all claims that are so related to claims in the action within such original jurisdiction that they form part of the same case or controversy[.]" 28 U.S.C. §

10

1367(a). However, the Court may decline to exercise supplemental jurisdiction if it "has dismissed all claims over which it has original jurisdiction[.]" 28 U.S.C. § 1367(c)(3). Because the Court has deferred ruling on whether Rozagiriza properly exhausted his administrative remedies with respect to his federal claims, the Court likewise reserves judgment on whether to exercise supplemental jurisdiction over any state-law claims. Should Rozagiriza fail to timely amend his complaint as instructed above, and the Court dismisses his federal claims as a result, the Court will decline to exercise supplemental jurisdiction over any remaining state-law claims.

### III.   Motion for Appointment of Counsel

Rozagiriza moves for appointment of counsel. Docket 2 at 6. "A pro se litigant has no statutory or constitutional right to have counsel appointed in a civil case." *Stevens v. Redwing*, 146 F.3d 538, 546 (8th Cir. 1998). The court "may request an attorney to represent any person unable to afford counsel." 28 U.S.C. § 1915(e)(1). When determining whether to appoint counsel to a pro se litigant, the court considers the "factual complexity of the case, the ability of the indigent to investigate the facts, the existence of conflicting testimony, the ability of the indigent to present his claim and the complexity of the legal issues." *Abdullah v. Gunter*, 949 F.2d 1032, 1035 (8th Cir. 1991) (citation omitted). At this time, Rozagiriza's claims do not appear to be factually or legally complex, and his filings set forth his claims. Because this Court believes that Rozagiriza capable of pursuing his claims pro se at this phase of litigation, his motion for appointment of counsel, Docket 2 at 6, is denied at this time.

**IV.  Conclusion**

Accordingly, it is ORDERED:

1. That Rozagiriza's motion for leave to proceed in forma pauperis, Docket 2, is granted.

2. That Rozagiriza's motion for appointment of counsel, Docket 2, is denied.

3. That Rozagiriza shall file an amended complaint within thirty (30) days of the date of this Order. The amended complaint shall include, as attachments, copies of his EEOC charge of discrimination and his right-to-sue letter. Rozagiriza is encouraged, but not required, to clearly plead the specific relief he seeks. Failure to comply with the Court's Order may result in dismissal of this action, without prejudice.

Dated August 6, 2025.

BY THE COURT:

/s/ *Camela C. Theeler*
CAMELA C. THEELER
UNITED STATES DISTRICT JUDGE
